UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TREMAYNE TALISON,

        Petitioner,

v.                                                               Case No. 2:04-cv-125
                                                               HON. RICHARD ALAN ENSLEN

TERRY SHERMAN,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        Petitioner Tremayne Talison filed this petition for writ of habeas corpus challenging the validity of his state court conviction for assault with intent to rob while armed. Petitioner was convicted by a jury on September 18, 2000, and was sentenced to 240 months to 480 months imprisonment as a fourth habitual offender. Petitioner was convicted of attempting to rob and assaulting victim Klaus-Peter Zauner near Zauner's residence in Detroit, Michigan. Witness Noelle Paschalidis helped the victim into his apartment building after he was stabbed while petitioner was still following the victim. The main issue at trial was the identification of petitioner.

        Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner raises the following claims in his petition:

I. Ineffective assistance of counsel, and

II. Prosecutorial misconduct.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner raises a claim of ineffective assistance of counsel for failure to present evidence of his limp and stutter, failure to object to suggestive in-court identification by witness Paschalidis, failure to request an expert on eyewitness identification, and the cumulative effects of these deficiencies. The Michigan Court of Appeals rejected petitioner's claims concluding:

At trial, defendant's counsel adequately presented the defense of misidentification. During the cross-examination of the victim, Klaus-Peter Zauner, defense counsel sought to undermine Zauner's identification of defendant as the perpetrator by impeaching Zauner's trial testimony that he saw his perpetrator's face for a period of time "considerably longer" than twenty seconds. In particular, defense counsel highlighted Zauner's preliminary examination testimony that he only saw the assailant's face for twenty to thirty seconds.

Defense counsel also explored the lack of daylight during the assault, and then turned to the clothing and physical description of Zauner's assailant. Defense counsel asked Zauner about his perpetrator's clothing, face shape, skin color, and height. Defense counsel then presented Zauner's preliminary examination testimony where Zauner testified that he had told the police he did not believe he could identify his assailant if he saw him again. Defense counsel also elicited testimony that Zauner could not remember which of the six photos used in a photo lineup depicted the man whom Zauner had identified as his perpetrator. Likewise, during cross-examination of the eyewitness Noelle Paschalidis, defense counsel revisited Paschalidis' earlier testimony that she had picked out the wrong person in the photo-lineup just three days after the assault. Thus, defense counsel elicited testimony to support defendant's position that he was not the man who tried to rob Zauner.

In light of trial counsel's thorough cross-examination of the two eyewitnesses in this case, his failure to introduce evidence concerning defendant's stutter and limp would have had little, if any, additional impact on the presentation of this defense. Given the fact that the perpetrator spoke only eight words during the commission of this offense, it is not clear how the existence of a stutter would have aided defendant's theory that the two eyewitnesses misidentified him.

Similarly, any trial testimony concerning the perpetrator's gait would not have benefitted defendant's defense that he was falsely accused of the convicted crime. Neither eyewitness testified concerning the presence of absence of a limp in the perpetrator's gait. Although Amanda Smith testified at trial that she could see the assault from her fourth floor apartment window across the street, and that the perpetrator walked away "normally" after committing the assault, Smith was describing the pace of the perpetrator's walk, not whether he walked with a limp. Thus, there was no trial testimony on the issue of whether the perpetrator who robbed Zauner walked with or without a limp. As plaintiff points out, defense counsel had sound strategic reasons to not introduce evidence that defendant had a limp

- 4 -

and to not explore whether the robber had one. If the jury knew that defendant walked with a limp, any questioning of the witnesses regarding whether the robber had a limp would not have been useful to the defense because a negative answer was not inconsistent with the testimony that the robber walked away slowly. Meanwhile, a positive answer would have been very persuasive evidence of defendant's identity as the robber. Because trial counsel's failure did not deprive defendant of a substantial defense, that representation was not ineffective.

Next, defendant argues that his trial counsel was ineffective for not challenging Paschalidis' in-court identification of defendant. If a witness is exposed to impermissibly suggestive pretrial identification procedures, no in-court identification is permitted absent a showing by clear and convincing evidence that the in-court identification is based on a sufficiently independent basis to purge the taint to the illegal identification. *People v. Kurylczyk*, 443 Mich 289, 303, 318; 505 NW2d 528 (1993). However, the defendant must show that, under the totality of the circumstances, the pretrial identification procedure employed was "so impermissibly suggestive as to have led to a substantial likelihood of misidentification." *People v. Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998).

Defendant has failed to identify any unduly suggestive pretrial identification procedure that led to a substantial likelihood of misidentification. Therefore, the prosecution was not required to present clear and convincing evidence that Paschalidis' in-court identification was based on a sufficiently independent basis other than an illegal pretrial identification. Furthermore, because trial counsel is not ineffective for failing to advocate a meritless position, *People v. Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000), we find no merit to defendant's argument that his trial counsel's failure to object to this in-court identification constitutes ineffective assistance.

Defendant also argues that his trial counsel's representation was ineffective because he failed to request an expert witness who could help the jury understand the evidence. In particular, defendant contends that expert testimony was needed to inform the jury that "erroneous eyewitness identifications are the result of pliable memories and innocent errors." Furthermore, defendant argues that an expert witness could have informed the jury that the photo lineup conducted in this case was contrary to the recommended procedure of certain law enforcement guidelines. Because defendant has not overcome the presumption that his trial counsel's failure to call an expert witness was reasonable trial strategy, his argument lacks merit.

- 5 -

> Defendant has not established that trial counsel's failure to call an expert witness deprived him of a substantial defense. Thus, trial counsel's failure to call the witness does not constitute ineffective assistance. *Hyland, supra* at 710. Furthermore, defendant has failed to create a record concerning what a proposed expert witness would have testified to if called. Therefore, it is not apparent from the existing record that trial counsel's failure to introduce expert testimony affected the outcome of trial. Because defendant has not overcome the presumption that his trial counsel's failure to call an expert witness constituted reasonable trial strategy and because defendant fails to establish that his trial counsel's failure affected the outcome of trial, we are not persuaded that defendant was deprived of his constitutional right to effective assistance of counsel.
>
> Defendant also argues that the cumulative effect of all these alleged errors warrants the conclusion that his trial counsel provided ineffective assistance. However, because none of these failures rose to the level of ineffective assistance, their cumulative effect did not deny defendant a fair trial.

Petitioner argues that the Michigan Court of Appeals' decision was contrary to clearly established standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had

no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Petitioner has failed to overcome the presumption that trial counsel's decisions were sound trial strategy. Under these circumstances, it is the opinion of the undersigned that petitioner cannot establish that the decision of the Michigan Court of Appeals, concluding that petitioner received effective assistance of counsel, was unreasonable.

Petitioner argues that the prosecutor committed misconduct by improperly vouching for the police identification. During closing argument the prosecutor stated:

> This is, ladies and gentlemen, the normal progression of investigation. Trust me. If his procedure was not something you could use, you would have never seen these pictures. We would never talk about them. Lineup is something normal used in an investigation.

Trial transcript at 200, docket #27.

The Michigan Court of Appeals rejected this claim, despite finding prosecutorial misconduct, concluding:

> Defendant argues that the prosecutor improperly vouched for the credibility of the police identification procedure despite the fact that no evidence was introduced concerning the "propriety or reliability" of the identification procedures.
>
> Defendant is correct that there was no evidence introduced at trial concerning the propriety or reliability of the photo lineup conducted in this case. A prosecutor may not make a statement of fact to the jury that is not supported by the evidence. *Schutte, supra* at 721. Because the prosecutor discussed the reliability or propriety of the photo lineup in the absence of any evidence supporting his statement, the prosecutor did engage in misconduct. Moreover, the error was plain because it was apparent that the prosecutor did not present any evidence on the intrinsic reliability or the propriety of photo lineups. Nevertheless, defendant has failed to establish how this misconduct deprived him of a fair trial or affected his substantial rights.
>
> Here, the six-picture photo lineup was entered into evidence at trial. Moreover, both eyewitnesses who participated in the identification procedure testified at trial and were subject to cross-examination. Regardless of whether the photo lineup identification procedure conducted in this case could be considered "the normal progression of investigation," the jury had the opportunity to consider the evidence of the photo identification and to determine from that evidence, as well as the in-court identification, whether defendant had been misidentified. Thus, defendant has failed to show how the impropriety of the prosecutor's statement that the identification procedure was "normal procedure" affected his substantial rights. Furthermore, the prejudicial effect of the improper statement was cured by the trial court's instruction to the jury that the prosecutor's arguments and statements are not to be considered evidence at trial. Thus, we do not believe that defendant was deprived of a fair trial.

In the opinion of the undersigned, petitioner has failed to show how his rights were violated or that any prejudice resulted from these alleged errors. Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action).

Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989). In the opinion of the undersigned, under the circumstances presented in this case, the statement by the prosecutor during closing argument did not prevent petitioner from receiving a fair trial. Moreover, petitioner cannot establish that the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. Petitioner has failed to show that he was denied the effective assistance of counsel or that he was denied his federal rights by prosecutorial misconduct. Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: March 13, 2007